UNITED STATES of America,
Plaintiff–Appellee,

v.

Joe John KAFKA III, Defendant–
Appellant.

No. 99–30305.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 2000

Filed Aug. 23, 2000

Tom Monaghan, AFP, Yakima, Washington, for the appellant.

S. Frederick Winiker III, AUSA, Yakima, Washington, for the appellee.

Before: HUG, Chief Judge,
BRUNETTI and GOULD, Circuit Judges.

BRUNETTI, Circuit Judge:

Joe John Kafka appeals his conviction for possession of a firearm while under a domestic violence restraining order in violation of 18 U.S.C. § 922(g)(8). On appeal, Kafka contends that section 922(g)(8) violates due process because it does not require notice to be given to persons subject to state domestic violence restraining orders that they are prohibited from possessing firearms under federal law. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Factual Background

In 1998, Kafka's ex-wife petitioned for a domestic violence restraining order against Kafka in Washington state court. Kafka was properly served with notice and appeared and participated in a hearing concerning the petition on June 25, 1998. At the hearing, the state court found that Kafka had committed an act of domestic

violence under state law. The state statute defines domestic violence as:

(a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking ... of one family or household member by another family or household member.

Wash. Rev.Code § 26.50.010. Based on its finding, the state court granted the petition and issued an order against Kafka, restraining him from "causing physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening, or stalking" Mrs. Kafka or her daughter. Kafka was not informed by the domestic violence restraining order or by any other method that he could be prosecuted under federal law for possession of firearms as a result of the issuance of the restraining order.

On March 30, 1999, state police officers stopped Kafka for a traffic violation. He advised the officers that he was carrying a pistol in the waistband of his pants. The pistol was loaded with a magazine containing eight rounds of ammunition. Kafka surrendered the pistol to the officers who cited him for carrying a concealed weapon without a valid permit. This charge was later dismissed.

On May 18, 1999, Kafka was indicted on a federal charge of possessing a firearm while being subject to a domestic violence restraining order in violation of 18 U.S.C. § 922(g)(8). Kafka filed a motion to dismiss, contending that the indictment violated the principles of fundamental fairness and due process guaranteed under the Fifth Amendment. After the motion

was denied, Kafka entered a conditional guilty plea, under which he expressly reserved his right to appeal the denial of the motion to dismiss. The district court departed downward and sentenced Kafka to a two-year term of probation and a $100 penalty. The judgment was issued on September 17, 1999. Kafka timely filed this appeal.

## Discussion

█ Kafka argues that 18 U.S.C. § 922(g)(8) violates due process by failing to require that persons subject to state domestic violence restraining orders receive notice and fair warning of the federal prohibition on possessing firearms. In other words, he contends that section 922(g)(8) is unconstitutional because it does not require the government to prove that the defendant had actual knowledge that his possession of a firearm was illegal. This court reviews constitutional challenges to a statute de novo. *United States v. Lara–Aceves*, 183 F.3d 1007, 1009 (9th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 836, 145 L.Ed.2d 702 (2000). It is unclear whether Kafka is making only a facial challenge to section 922(g)(8) or whether he is also asserting an "as applied" challenge. Even under the lesser "as applied" standard,[1] Kafka's challenge fails.

Section 922(g)(8) prohibits the possession of a firearm by an individual subject to a domestic violence restraining order issued after a hearing in state court. 18 U.S.C. § 922(g)(8). An individual charged under this statute must have received actual notice of the restraining order hearing and must have had an opportunity to participate in the hearing. *Id.* In addition,

---

1. *Compare United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid") *and City of Chicago v. Morales*, 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality op.) (Stevens, J., Souter, J.,

and Ginsburg, J.) (criticizing *Salerno* and suggesting that a plaintiff can prevail on a facial challenge by merely showing a statute is unconstitutional in most cases) *with Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) ("[a]n as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others").

section 922(g)(8) requires that the restraining order include either (1) a finding that the individual represents a credible threat to physical safety of his intimate partner or child, or (2) an explicit prohibition on the individual's use of physical force against his intimate partner or child. *Id.*

To obtain a conviction, the government must prove, as set forth in 18 U.S.C. § 924(a)(2), that a defendant "knowingly" violated section 922(g)(8). This knowledge requirement applies only to the act of possession, not to the prohibition on possessing firearms. *See Bryan v. United States,* 524 U.S. 184, 193, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) ("unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense") (footnote omitted); *United States v. Bostic,* 168 F.3d 718, 722–23 (4th Cir.), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999) (finding the term "knowingly" as applied to section 922(g)(8) offenses does not require a defendant be aware of the illegality of his conduct), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999); *see also United States v. Miller,* 105 F.3d 552, 555 (9th Cir.1997) ("the § 924(a) knowledge requirement applies only to the possession element of § 922(g)(1), not to the interstate nexus or to felon status"). Accordingly, in this case, the government was not required to prove, and did not prove, that Kafka knew his possession of a firearm violated the law.

Kafka contends that the lack of such a mens rea requirement violates due process. "The rule that 'ignorance of the law will not excuse' is deep within our law...." *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (citation omitted); *see also Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). According to Kafka, however, an exception to this general rule applies here because section 922(g)(8) is a technical, obscure statute which punishes conduct that a reasonable person ordinarily would not consider to be criminal. Although every circuit court which has

considered this argument has rejected it, *see United States v. Reddick,* 203 F.3d 767, 769–71 (10th Cir.2000); *United States v. Baker,* 197 F.3d 211, 218–20 (6th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000); *United States v. Meade,* 175 F.3d 215, 225–26 (1st Cir. 1999); *Bostic,* 168 F.3d at 722–23; *United States v. Wilson,* 159 F.3d 280, 288–89 (7th Cir.1998), *cert. denied,* 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 774 (1999), Kafka seeks to have this court embrace the minority view espoused by Judge Posner's dissent in *Wilson* and a district court decision in *United States v. Emerson,* 46 F.Supp.2d 598 (N.D.Tex.1999). Kafka also relies on the Supreme Court's landmark decision in *Lambert* as supporting this minority view. However, *Lambert* is distinguishable on its facts, and we are not persuaded by the reasoning of *Emerson* or Judge Posner's dissent in *Wilson.*

In *Lambert,* the defendant was convicted of violating a municipal ordinance which made it a crime for felons to remain in the city for more than five days without registering with the police. The defendant was not aware that her mere presence in the city gave rise to a duty to register and there was no showing of any circumstances that might have alerted her to such a duty or prompted her to inquire as to the necessity of registration. Because the ordinance punished, without forewarning, "wholly passive" conduct that a reasonable person would not consider to be criminal, the Supreme Court found that it violated due process. *See* 355 U.S. at 228–30, 78 S.Ct. 240. Under these unique circumstances, the Court determined that a departure from the traditional rule that ignorance of the law is no excuse was warranted. *Id.; see also Bryan,* 524 U.S. at 194–95, 118 S.Ct. 1939 (noting exceptions to the traditional rule where highly technical statutes presented a "danger of ensnaring individuals engaged in apparently innocent conduct").

In *Wilson,* Posner dissented from the majority's ruling that section 922(g)(8) is

constitutional. In order to avoid the constitutional due process issue raised by section 922(g)(8), Posner argued that the majority should have interpreted the term "knowingly" to require proof that a defendant knew his possession of a firearm was unlawful. 159 F.3d at 293. Applying *Lambert,* Posner reasoned that due process concerns are implicated by this "obscure" statute because it traps gun owners who have no reason to believe or to know that their "apparently innocent conduct" of continuing to possess guns is illegal under federal law once a state restraining order is entered against them. Posner concluded that "to intone 'ignorance of the law is no defense' [with respect to section 922(g)(8) ] is to condone a violation of fundamental principles for the sake of a modest economy in the administration of criminal justice." *Id.* at 295. Following Posner's reasoning, *Emerson* held that section 922(g)(8) offends both substantive and procedural due process because it is such an "obscure, highly technical" criminal provision that the defendant did not know he was violating the law. 46 F.Supp.2d at 612–13. The district court determined that it is unfair to hold a defendant accountable without notice under section 922(g)(8) where "there is nothing inherently evil about [the defendant] possessing a firearm while being under a domestic violence restraining order." *Id.* at 612.

Although Posner's dissent and *Emerson* correctly assume that the mere possession of firearms can be characterized as "apparently innocent" conduct, *see Staples v. United States,* 511 U.S. 600, 609–12, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), they wrongfully ignore the effect that a state court's decision to issue a domestic violence restraining order has on the "innocent" nature of such conduct. In *Meade,* the First Circuit explained the significance of restraining orders in the context of firearm possession:

> As *Staples v. United States,* makes clear, firearms possession, without more, is not a kind of activity comparable to possession of hand grenades, narcotics,

or child pornography. But possession of firearms by persons laboring under the yoke of anti-harassment or anti-stalking restraining orders is a horse of a different hue. The dangerous propensities of persons with a history of domestic abuse are no secret, and the possibility of tragic encounters has been too often realized. We think it follows that a person who is subject to such an order would not be sanguine about the legal consequences of possessing a firearm, let alone of being apprehended with a handgun in the immediate vicinity of his spouse.

175 F.3d at 226 (citations omitted); *see also Baker,* 197 F.3d at 220 ("it was not reasonable for someone [subject to a restraining order] to expect to possess dangerous weapons free from extensive regulation"); *Bostic,* 168 F.3d at 722 ("[l]ike a felon, a person [subject to a restraining order] cannot reasonably expect to be free from regulation when possessing a firearm"). Kafka correctly notes that *Meade* and *Bostic* are factually distinguishable because, unlike Kafka, the defendants in those cases were arrested for violating section 922(g)(8) after or during a violation of their domestic violence restraining orders. However, the reasoning of these cases and of *Baker* is persuasive and will be applied here.

In this case, the state court issued a restraining order against Kafka based on a specific finding that he had committed an act of domestic violence. The restraining order transformed the otherwise "innocent" nature of Kafka's gun possession because it specifically curtailed his activities in light of the court's recognition of his past violent behavior. In particular, the order restrained him from causing Mrs. Kafka or her daughter physical harm, bodily injury, or assault, and from molesting, harassing, threatening or stalking either of them. Given these restrictions, the issuance of the order itself should have alerted Kafka to the possibility of other limitations on his conduct, including the prohibition on

his possession of firearms, especially when one acknowledges that a firearm is the ultimate instrument to accomplish the acts which the restraining order specifically prohibited. Accordingly, the existence of the restraining order makes this case distinguishable from *Lambert* where the "circumstances which might move one to inquire as to the necessity of registration [were] completely lacking." 355 U.S. at 229, 78 S.Ct. 240. Moreover, unlike *Lambert*, Kafka's carrying of a pistol loaded with eight rounds of ammunition in the waistband of his pants while driving a vehicle cannot be construed as "wholly passive" conduct.

Because Kafka's conduct does not involve conduct or circumstances so presumptively innocent as to fall within *Lambert*'s exception to the traditional rule that ignorance of the law is no defense, Kafka's due process challenge to section 922(g)(8) has no merit.

AFFIRMED.