**William Louis BARTLETT, Petitioner,**

v.

**W.A. DUNCAN, Warden,[1] Respondent.**

**No. CV 02–4897–TJH.**

United States District Court,
C.D. California.

April 15, 2003.

---

1. Leslie R. Banks has become the warden at the institution where petitioner is incarcerated. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Leslie R. Banks should, therefore, be substituted for W.A. Duncan as the respondent in this case. *See* Fed.R.Civ.P. 25(d).

All Parties of Record, Barbara Michel, Esq., Berkeley.

Karen Bissonnette, Deputy Attorney General, Los Angeles.

## ORDER ACCEPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HATTER, District Judge.

Pursuant to 28 U.S.C. § 636, the court has reviewed the entire file de novo, in-cluding the magistrate judge's report and recommendation.

IT IS ORDERED:

1. The report and recommendation is accepted.

2. Judgment shall be entered consis-tent with this order.

3. The clerk shall serve this order and the judgment on all counsel or parties of record.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABE-AS CORPUS BY A PERSON IN STATE CUSTODY

This report and recommendation is sub-mitted to the Honorable Terry J. Hatter, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and Gen-eral Order 194 of the United States Dis-trict Court for the Central District of Cali-fornia. For the reasons discussed below, it is recommended that the petition be denied and dismissed with prejudice.

### *SUMMARY OF PROCEEDINGS*

On June 20, 2002, petitioner, a prisoner in state custody and represented by coun-sel, filed the underlying petition for writ of habeas corpus in this matter. On July 8, 2002, petitioner filed a first amended peti-tion. On August 22, 2002, petitioner filed a second amended petition ("petition"). On January 17, 2003, respondent filed a return ("return"). On March 11, 2003, petitioner filed a traverse ("traverse").

### *BACKGROUND*

On August 12, 1983, petitioner was con-victed of forcible rape. (CT 6).[2] This

---

**2.** "CT" refers to the clerk's transcript of the proceedings. "RT" refers to the reporter's

conviction required petitioner to register with local authorities for the rest of his life as a sex offender. *See* Cal.Penal Code § 290. On September 28, 1999, a jury convicted petitioner of failure to register as a sex offender in violation of California law. (CT 158). Petitioner was sentenced to a term of twenty-five years to life under California's "Three Strikes" law. (CT 182).

Petitioner filed an appeal of his conviction in the California Court of Appeal. (Lodged Doc. 3).[3] On December 19, 2000, the Court of Appeal affirmed the judgment. (Ret., Ex. A).

Petitioner filed a petition for review in the California Supreme Court. (Ret., Ex. B). On March 14, 2001, the California Supreme Court denied the petition without comment or citation to authority. (Ret., Ex. C).

This federal petition followed.

### CONTENTIONS

In this petition, petitioner raises the following grounds:

1. Due process requires that a defendant know of the duty to register before that defendant may be convicted of failing to do so, but the prosecution did not prove knowledge, and the jury was instructed that knowledge was not necessary;

2. 25 years to life is grossly disproportionate to the offense and offends the Eighth Amendment's ban on cruel and unusual punishment; and,

3. One of petitioner's jury instructions violated his right to a fair trial.

transcript of the proceedings. Each reference will be followed by the applicable page number(s).

**3.** The lodged documents are numbered according to the notice of lodging filed by respondent on January 17, 2003.

(Pet., Attached Pages 1–5). Respondent contends that ground three is procedurally barred and that the petition fails on the merits.

### FACTUAL SUMMARY

The facts set forth in the California Court of Appeal's opinion are reasonably supported by the record, and that opinion is attached as an exhibit to this report and recommendation. (Ret., Ex. A)*. Essentially, California law mandates that petitioner register with the local authorities as a sex offender because of his 1983 conviction for rape. Before his release from prison in May of 1998, petitioner was required to sign a form notice that acknowledged his duty to register with local authorities as a sexual offender ("duty to register notice"). After his release, petitioner did not register with local authorities or report to his parole officer.

### DISCUSSION

#### Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or, (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state

* Exhibit A is not included for publication because it was not designated for publication by the Court of Appeal of the State of California.

court proceeding." 28 U.S.C. § 2254(d)(as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")); *see also Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (stating that "[S]ection 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.").

A state court decision is "contrary to" the Supreme Court's clearly established precedents if it "applies a rule that contradicts the governing law set forth" in the Supreme Court's cases or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor,* 529 U.S. at 405–06, 120 S.Ct. 1495. State court decisions that are not contrary to clearly established Supreme Court precedent warrant federal habeas corpus relief "only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or based on 'an unreasonable determination of the facts.'" *Early v. Packer,* 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002); *see also Woodford v. Visciotti,* 537 U.S. 19, 123 · S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) (emphasizing difference between unreasonable application of federal law and incorrect application). A state court decision is an "unreasonable application of" the Supreme Court's precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts" of the case. *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (quoting *Williams v. Taylor,* 529 U.S. at 407–08, 120 S.Ct. 1495).

■ The United States Supreme Court has held that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). In this case, the last reasoned state judgment is the California Court of Appeal's opinion. On habeas review, when there is no reasoned state court decision to review, the court conducts "an independent review of the record ... to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

## 1. *Notice of Registration Requirement* (Ground 1)

Petitioner contends that his conviction for failure to register violates his due process rights. Petitioner argues that California Penal Code section 290(a)(1)(A) ("section 290") requires that the prosecution prove that the accused have actual knowledge of the registration requirement, but that in his case, the prosecution was only required to prove that petitioner had been given notice of the duty to register and the jury was instructed that actual knowledge was not necessary.

■ To the extent petitioner claims a jury instruction was incorrect under state law, his claim is not cognizable on federal habeas review. *Estelle v. McGuire,* 502 U.S. 62, 68 n. 2, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). To merit relief, petitioner must show the instructional error so infected the entire trial that the resulting conviction violated due process. *Id.; see also Calderon v. Coleman,* 525 U.S. 141, 146–47, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (assuming arguendo that the trial court's failure to give a jury instruction violated due process, this court must still assess whether the error had a "substantial and injurious effect or influence in

determining the jury's verdict"). The allegedly erroneous instruction must be considered in the context of the trial record and the instructions as a whole. *Estelle v. McGuire,* 502 U.S. at 72, 112 S.Ct. 475.

On December 19, 2000, the court of appeal rejected petitioner's contention. (Ret., Ex. A at 27). Acknowledging that the issue was currently before the California Supreme Court, the court of appeal concluded that petitioner's argument was without merit because "actual knowledge is not an element of the offense of failing to register as a sexual offender" and:

> [T]here is substantial evidence that [petitioner] willfully failed to register. On five separate occasions over a 10–year period, [petitioner] personally acknowledged receiving actual notice that his "responsibility to register as a sexual offender is a lifetime requirement." Although [petitioner] registered in 1987 and again in 1990, he failed to re-register after his May 1998 release and did not thereafter report to his parole officer. After his 1998 release, [petitioner] further demonstrated both notice and knowledge of his continuing duty to register by living under an assumed name and using a false birth date. The jury could reasonably infer from this evidence that [petitioner] willfully failed to comply with the registration requirement despite his actual notice of it.

(Ret., Ex. A at 30).

However, five months later on May 31, 2001, the California Supreme Court held that in order to satisfy the due process requirements set forth by the United States Supreme Court in *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), section 290 requires proof that "in addition to being formally notified by the appropriate officers as required by section 290, in order to willfully violate section 290 *the defendant must actually know of the duty to register....* In

the registration act context, the jury must find actual knowledge of the act's legal requirements." *People v. Garcia,* 25 Cal.4th 744, 754, 107 Cal.Rptr.2d 355, 23 P.3d 590 (2001) (emphasis added). The California Supreme Court further opined that while a jury may infer actual knowledge from notice, notice alone does not necessarily satisfy the actual knowledge requirement. *People v. Garcia,* 25 Cal.4th at 752, 107 Cal.Rptr.2d 355, 23 P.3d 590.

Despite holding that the trial court erroneously led the jury to believe that it did not have to find actual knowledge to find the defendant guilty, the California Supreme Court nonetheless found that this error was harmless beyond a reasonable doubt. *People v. Garcia,* 25 Cal.4th at 755, 107 Cal.Rptr.2d 355, 23 P.3d 590 (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The California Supreme Court determined that the error was harmless for the following reasons: 1) the prosecution presented strong evidence that defendant knew of the registration requirement; 2) the only evidence suggesting that the defendant did not have actual knowledge stemmed from the defendant's testimony that nobody explained his duty to register to him and that he signed but did not read the notice that explained this duty; and, 3) the jury instructions required that to find defendant guilty, the jury had to find that the defendant had read and signed the form "required by the Department of Justice stating that the duty of [the] person to register under [section 290] will be explained to him." *People v. Garcia,* 25 Cal.4th at 755, 107 Cal.Rptr.2d 355, 23 P.3d 590. Accordingly, the California Supreme Court concluded "beyond a reasonable doubt that the same jury, properly instructed on the knowledge requirement, would also have concluded that he was aware of his duty to register." *People v.*

*Garcia,* 25 Cal.4th at 755, 107 Cal.Rptr.2d 355, 23 P.3d 590.

Here, the trial court instructed the jury that a conviction under section 290 required that the defendant "willfully" fail to register. (RT 221–22). The trial court explained to the jury that "willfully" meant with a purpose or willingness to commit the act or to make the omission in question and did not require any intent to violate the law, to injure another, or to acquire any advantage. (CT 92–94; RT 221–22). The jury was also instructed that actual notice of the registration requirement was an element of the offense under section 290, but that actual or probable knowledge was not. (RT 221).

On the second day of deliberations, the jury asked the trial court for clarification on the definition of "willfully." (RT 261). The trial court gave the following additional instruction regarding willfully:

> The term willfully when applied in a penal statute requires only that the illegal act or omission occur intentionally without regard to motive or ignorance of the act's prohibited character. The term willfully applies to omissions to act as well as to affirmative acts. It is possible for a person to purposefully and willingly omit to do something when the person has no actual knowledge of the obligation to act. An omission to act is not willful only if circumstances beyond

the defendant's control prevent him from acting.

(RT 266).

■ Assuming after the California Supreme Court's decision in *People v. Garcia* that the jury was erroneously instructed in such a manner that it violated due process, *but see Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (holding federal courts are prevented from granting habeas corpus relief to a state prisoner based on a rule announced after the conviction and sentence become final), it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman,* 525 U.S. at 146–47, 119 S.Ct. 500. As in *People v. Garcia,* overwhelming evidence was adduced at trial that petitioner possessed actual knowledge of the registration requirement: 1) petitioner registered as a sex offender five times between 1986 and 1990 in Los Angeles County and San Luis Obispo County (CT 120; RT 58–61, 73–80, 121, 129–31, 178–83); 2) petitioner testified at trial that he had registered approximately five times while on parole (RT 171); 3) petitioner signed six duty to register notices between 1986 and 1998, including one on May 12, 1998 in coordination with his last release from prison[4] (CT 120; RT 60, 121, 145–52, 187); 4) the statute itself notified petitioner of his life-long duty to

---

4. Petitioner also completed duty to register notices on February 3, 1986; April 9, 1987; January 17, 1988; June 9, 1997; and, December 8, 1997. (RT 121, 125, 186). The standard duty to register notice contains the following language:

> I have been notified of my duty to register as a convicted sexual offender pursuant to section 290 of the California Penal Code. *I understand that my responsibility to register as a sexual offender is a lifetime requirement.* I must register within five working days of coming into any city, county or city and county in which I am domiciled with the law enforcement agency having juris-

diction over my place of residence. I must, upon changing my residence, inform in writing, within five working days of my birth date to the law enforcement agency having jurisdiction over my place of residence and update my registration, name and vehicle information. I must disclose, I am a registered sexual offender to the licensee of the community care facility before becoming a client of that facility. And within five working days of changing my name, I must notify the law enforcement agency [ ] having jurisdiction over my place of residence.

(RT 125–26) (emphasis added).

register, *see* Cal.Penal Code § 290(A)(1)(a); and, 5) the strongest evidence suggesting that petitioner did not have actual knowledge that he was required to register for the rest of his life stemmed from his own testimony that nobody explained his duty to register to him and that he signed but did not read the notice that explained this duty. (RT 170–203).

▇ Finally, petitioner's ground does not warrant habeas corpus relief because the California courts' decision was not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts. *See Williams v. Taylor*, 529 U.S. at 405–08, 120 S.Ct. 1495. As the court of appeal observed, the United States Supreme Court's decision in *Lambert* did not require a different result because *Lambert* established that a defendant cannot be convicted of violating a registration act without actual knowledge of the duty to register or *proof of the probability of such knowledge*. *See Lambert v. California*, 355 U.S. at 229, 78 S.Ct. 240 (emphasis added); *see also U.S. v. Kafka*, 222 F.3d 1129, 1132–1133 (9th Cir.2000) (finding *Lambert* does not apply where the circumstances, including any notice expressly or impliedly provided by the criminal statute, should have alerted defendant to the registration requirement). Thus, the California Supreme Court's rule in *People v. Garcia* is broader than that established by the United States Supreme Court in *Lambert*, and the California courts' decision in this case comported with United States Supreme Court law at the time it was reached. Moreover, as concluded by the court of appeal, petitioner's repeated actual notice of the registration requirement [5] supplied "proof of the probability" of actu-

al knowledge sufficient to comply with the requirements of *Lambert*. (Ret., Ex. A at 29). Habeas relief is unwarranted on this ground.

## 2. *CALJIC No. 17.41.1* (Ground 3)

Petitioner claims that trial court violated petitioner's right to a fair trial because it instructed the jury with California Jury Instruction Criminal ("CALJIC") No. 17.41.1.

### A. *Procedural Bar*

Respondent contends that ground three is procedurally barred because petitioner failed to object to CALJIC No. 17.41.1 at trial.

▇ The procedural default doctrine forecloses federal review of a state prisoner's federal habeas claims if those claims were defaulted in state court pursuant to an independent and adequate state law ground. *See Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). To find procedural default, a federal court must determine that the state court explicitly invoked a state procedural bar as an independent basis for its decision, *id*. at 735, 111 S.Ct. 2546; *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir.1995), and that the state procedural bar cited was clear, consistently applied, and well-established at the time of the petitioner's purported default. *See Calderon v. U.S. Dist. Court for Eastern Dist. Of California (Bean)*, 96 F.3d 1126, 1129 (9th Cir.1996).

The failure to object at trial is a longstanding appellate procedural bar. *See, e.g., R.L. Investment Ltd. v. INS*, 273 F.3d 874 (9th Cir.2001) (declining to consider on appeal arguments not raised in the trial

---

**5.** The court of appeal found that "the overwhelming evidence supports the jury's finding that [petitioner] was given actual notice of his life-long duty to register on at least five occasions." (Ret., Ex. A at 29). This court concurs.

court). Moreover, the United States Supreme Court has previously found that failure to object at trial is an independent and adequate state procedural bar. *See Wainwright v. Sykes*, 433 U.S. 72, 86, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ The California Court of Appeal held that petitioner waived this claim because he failed to object to the instruction at trial. (Ret., Ex. A at 30). After an independent review of the record, the court concurs with the court of appeal that petitioner failed to object to the instruction at trial and concludes that this ground is procedurally barred. *Cf. Ayuyu v. Tagabuel*, 284 F.3d 1023, 1026 (9th Cir.2002) (finding in federal civil suit that claim based on an improper verdict form is waived if no objection to the form of the verdict was made in the record or in the motion for new trial). However, due to the rapidly evolving complex law concerning procedural default in this circuit, this court alternatively considers the merits. *See generally Petrocelli v. Angelone*, 248 F.3d 877 (9th Cir.2001) (observing Ninth Circuit case law in this area is complex); *see generally Bennett v. Mueller*, 296 F.3d 752, 758–61, 763 (9th Cir.2002) (finding California's untimeliness bar is independent but remanding matter to district court to determine whether it is adequate to preclude federal habeas corpus review).

### B. *Merits*

The record reflects that the trial court advised the jury that "[y]ou must accept and follow the law as I state it to you, regardless of whether you agree with the law." (RT 213; CALJIC No. 1.00). The trial court also read CALJIC No. 17.41.1 to the jury:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to delib-

erate or expresses an intention to disregard the law or to decide the case based on penalty or punishment or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

(RT 226–27; CALJIC No. 17.41.1). Trial counsel did not object to these instructions.

■ The trial court also instructed the jurors regarding their duty to decide the case based on their individual opinions:

> The people and the defendant are entitled to the individual opinion of each juror. Each of you must consider the evidence for the purpose of reaching a verdict if you can do so. Each of you must decide the case for yourself, but should do so only after discussing the evidence and instructions with the other jurors. Do not hesitate to change an opinion if you are convinced it is wrong. However, do not decide any question in a particular way because a majority of the jurors, or any of them, favor that decision. Do not decide any issue in this case by the flip of a coin, or by any other chance determination.

(RT 226; CALJIC No. 17.40). Additionally, the trial court instructed the jury "[i]n your deliberations do not discuss or consider the subject of penalty or punishment. That subject must not in any way affect your verdict." (RT 227; CALJIC No. 17.42). The trial court concluded its instruction of the jury by stating that "[i]n order to reach a verdict all [twelve] jurors must agree to the decision." (RT 253; CALJIC No. 17.50). The jury is presumed to have followed the trial court's instructions. *Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

Petitioner raised this ground in the California Court of Appeal, and the court of

appeal concluded there was no error.[6] (Ret., Ex. A at 30). The court of appeal determined that rather than "chilling" jury deliberations, CALJIC 17.41.1 would only coerce or intimidate a juror "bent on misconduct." (Ret., Ex. A at 31). The court of appeal also found that the instruction did not discourage or undermine a "holdout" juror in part because the jury was instructed with CALJIC No. 17.40 which encourages jurors to not abandon their individual views of the evidence in favor of the majorities. (Ret., Ex. A at 31).

To the extent petitioner claims this jury instruction was incorrect under state law, his claim is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. at 68 n. 2, 112 S.Ct. 475. To merit relief, petitioner must show the instructional error so infected the entire trial that the resulting conviction violated due process. *Id.; see also Calderon v. Coleman*, 525 U.S. at 146–47, 119 S.Ct. 500 (assuming *arguendo* that the erroneous jury instruction violated due process, this court must still assess whether the error had a "substantial and injurious effect or influence in determining the jury's verdict"); *Cupp v. Naughten*, 414 U.S. at 147, 94 S.Ct. 396. The allegedly erroneous instruction must be considered in the context of the trial record and the instructions as a whole. *Estelle v. McGuire*, 502 U.S. at 72, 112 S.Ct. 475; *Henderson v. Kibbe*, 431 U.S. at 156, 97 S.Ct. 1730.

 "The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." *Shannon v. United States*, 512 U.S. 573, 579, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994). The jury is not to consider the consequences of its verdict, and should be instructed to reach its verdict without regard to what sentence might be imposed. *Id.* "Jury nullification" occurs when the jury acquits the defendant even though the government has proven its case beyond a reasonable doubt. *United States v. Powell*, 955 F.2d 1206, 1212–13 (9th Cir.1991). Defendants are not entitled to jury nullification instructions; "anarchy would result from instructing the jury that it may ignore the requirements of the law." *Id.* at 1213 (citation omitted). Although the jury has the power of nullification, the jury has no right to engage in nullification. *Standefer v. United States*, 447 U.S. 10, 22, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

 Based on review of the entire record, this court concurs under the applicable standard of review with the state court's determination, and independently finds that the administration of CALJIC No. 17.41.1 did not so infect the trial that the resulting conviction violated petitioner's constitutional right to due process. Considered as a whole, the instructions administered to the jury accurately stated the law and advised the jurors that it was their duty to decide the case based on their individual opinions. Moreover, the record contains no indication that any problems arguably attributable to CALJIC No. 17.41.1—such as jury deadlock, conflict regarding holdout jurors, refusal to follow the law, or intrusion by the presiding judge into the deliberative process—

---

6. After the court of appeal's opinion was filed, the California Supreme Court held in *People v. Engelman*, 28 Cal.4th 436, 121 Cal.Rptr.2d 862, 49 P.3d 209 (2002), that "merely because CALJIC No. 17.41.1 might induce a juror who believes there has been juror misconduct to reveal the content of deliberations unnecessarily (or threaten to do so)," the giving of the instruction did not constitute a violation of the constitutional right to trial by jury or otherwise constitute error under state law. *People v. Engelman*, 28 Cal.4th 436, 444, 121 Cal.Rptr.2d 862, 49 P.3d 209. The court did, however, conclude that the instruction should not be given in future criminal cases because it had the "potential" to intrude on the deliberative process. *Id.*

occurred during deliberations. Rather, the record reflects that the jurors deliberated for approximately two days, even declared themselves "hung" at one point, and then returned their verdict. (CT 69; RT 225, 263, 269). Habeas corpus relief is unwarranted on this ground.

## 2. *Eighth Amendment* (Ground 2)

Petitioner contends that his sentence constitutes cruel and unusual punishment because it is disproportionately severe to his crime.

■■■■ "[T]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring) (quoting *Solem v. Helm,* 463 U.S. 277, 288, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *Rummel v. Estelle,* 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *see also Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (upholding sentence of life without possibility of parole for possession of 672 grams of cocaine). Accordingly, one "clearly established" principle of federal law is that the "gross disproportionality principle is applicable to sentences for terms of years" only in "exceedingly rare," "extreme," or "extraordinary" cases. *Lockyer v. Andrade,* — U.S. —, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (finding it was not an unreasonable application of clearly established federal law for California courts to affirm sentence of two consecutive terms of twenty-five years to life in prison under California's "Three Strikes" law for petty theft with a prior petty theft conviction).

■■■ The Supreme Court has traditionally accorded considerable deference to state legislatures to determine the length of sentences for crimes classifiable as felonies. *Rummel v. Estelle,* 445 U.S. at 274, 100 S.Ct. 1133.[7] It is also well established that legislatures may punish recidivists more severely than first-time offenders. *Id.* at 276, 100 S.Ct. 1133 (upholding a life sentence imposed under a recidivist statute where the three felonies were passing a forged $28.36 check, fraudulent use of a credit card to obtain $80.00 worth of goods or services, and obtaining $120.75 by false pretenses). Moreover, the Supreme Court has a longstanding tradition of deferring to state legislature decisions regarding recidivist sentencing laws like California's "Three Strikes" law. *See Ewing v. California,* — U.S. —, 123 S.Ct. 1179, 1186–89, 155 L.Ed.2d 108 (2003) (finding the sentence of twenty-five years to life in prison under California's "Three Strikes" law for grand theft of three golf clubs is not grossly disproportionate).

The California Court of Appeal considered petitioner's argument and rejected it. (Ret., Ex. A at 31). The court observed:

[Petitioner] has four prior convictions of serious felonies. He has violated parole and returned to prison on multiple occasions for, among other things, being under the influence of illegal drugs, providing false identification to a police officer, and failing to appear on a felony charge. [Petitioner] has used weapons in prior robberies. Lengthy periods of incarcer-

---

**7.** In *Rummel v. Estelle,* the Supreme Court expressed the need for great deference to legislative choices regarding punishments for recidivists, but stated: "This is not to say that a proportionality principle would not come into play in the extreme example ... [where] a legislature made overtime parking a felony punishable by life imprisonment." 445 U.S. at 274 n. 11, 100 S.Ct. 1133.

ation followed by supervision on parole have failed to deter [petitioner's] criminality. Under these circumstances, [petitioner's] sentence of 25 years to life does not "offend[ ] fundamental notions of human dignity or ... shock[ ] the conscience."

(Ret., Ex. A at 32) (citation omitted). The court concurs under the applicable standard of review. *See Early v. Packer*, 537 U.S. 3, 123 S.Ct. at 365, 154 L.Ed.2d 263 (finding state court decision does not even require awareness of United States Supreme Court cases, so long as neither the reasoning nor the result of the state court decision contradicts them).

■ As the California Court of Appeal made clear, petitioner was sentenced to a term of twenty-five years to life in prison because of his prior criminal history, his instant offense, and his failure to be deterred from criminal acts despite significant time in custody. Therefore, petitioner's case is not one of those "exceedingly rare" cases where the sentence was grossly disproportionate to the crime. Petitioner's sentence, although harsh, did not violate the Eighth Amendment. Habeas relief is unwarranted on this ground.

### CONCLUSION

After independent review of the record and, where applicable, looking through the California Supreme Court's silent denial on the claims raised in this petition, this court finds that the California courts' adjudication of these claims did not involve an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. As a result, habeas corpus relief is not warranted.

### RECOMMENDATION

In accordance with the foregoing, it is recommended that the court issue an or-

der: (1) accepting this report and recommendation; and (2) directing that judgment be entered denying and dismissing the petition with prejudice.

### NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrates and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of judgment of the District Court.